# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

MICHAEL WILSON,         )
                                    )

         *Petitioner,*      )
                                    )

         v.                )      No. 1:16-cv-00024-RL
                                    )

SUPERINTENDENT, INDIANA   )
STATE PRISON,              )
                                    )

         *Respondent.*     )

## RETURN TO ORDER TO SHOW CAUSE

Respondent, by counsel, submits this Return to Order to Show Cause. Respondent respectfully requests this Court to dismiss the petition with prejudice because Petitioner's claims are without merit.

## JURISDICTION

Petitioner, Michael Wilson, is in the custody of Respondent, Ron Neal, Superintendent of the Indiana State Prison. Petitioner is identified by prisoner number 174500. Petitioner is currently serving a sixty-year sentence, with fifteen years suspended subject to five years of probation upon his 2008 Marion County, Indiana, conviction for murder. As it currently stands, Petitioner's earliest possible release date under this conviction is April 1, 2029. Petitioner brings the instant action pursuant to 28 U.S.C. § 2254, which provides for federal collateral review of confinement based on a judgment of a state court.

# EXHAUSTION

Respondent states that Petitioner has exhausted his state court remedies inasmuch as direct and post-conviction review have concluded. No further avenues for relief remain.

# STATEMENT OF THE FACTS

In reviewing a petition for federal collateral relief from a state court judgment of conviction, this Court must presume as correct the facts as found by the state courts. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); see *Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996) (*en banc*), *rev'd on other grounds*, 521 U.S. 320 (1997). Moreover, Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

On appeal from the denial of post-conviction relief, the Indiana Court of Appeals set forth the following facts and procedural history:

> The facts most favorable to the verdict reveal that thirty-two-year-old Wilson and thirty-three-year-old Nupur Srivastava met at a drug and alcohol rehabilitation center in New York in November 2006. After Nupur was discharged from the center, she joined Wilson at his father's home in Indianapolis in January 2007, and later rented an apartment on the north side of town. In early April 2007, while Nupur was visiting her family in Maryland, her parents convinced her she needed to return to the rehabilitation center. Nupur briefly returned to Indianapolis to retrieve her belongings. The day before she was scheduled to leave Indianapolis, Nupur and Wilson were drinking whiskey and arguing on Wilson's father's patio when Wilson splashed Nupur with gasoline and set her on fire.
>
> Nupur ran through Wilson's father's house to the bathroom where she filled up the bathtub and jumped into it to put out the

flames. While she was in the bathtub, Wilson called 911 to report a fire. During the phone call, Nupur asked Wilson why he had done that. Wilson responded, "I didn't think it was going to be like that, I swear."

When paramedics arrived at the scene, Nupur walked unassisted out of the garage. Paramedic Jeff Brown ran to Nupur and escorted her to an ambulance. When Brown asked Nupur what had happened, she told the paramedic that Wilson had poured gas on her and set her on fire. Brown placed Nupur in the ambulance and turned to see a naked Wilson standing in the yard. Wilson had burns on his hands and portions of his forearms. Wilson told the paramedic that there had been an accident with the gas grill. On the way to the hospital, Nupur again told Brown as well as paramedic Shawn Grindstaff that she and Wilson were arguing when Wilson threw gasoline on her and lit her on fire. Wilson told another paramedic and a hospital nurse that the fire started when he and Nupur tried to light a grill using gasoline.

The following day, Indianapolis Police Department Sergeant John Breedlove went to the hospital to interview Wilson. Before the interview, Breedlove consulted with hospital staff who advised him that Wilson was taking Percocet for pain. Before questioning Wilson, Sergeant Breedlove read him his Miranda rights and had him sign a waiver of rights form.[2] Wilson told the sergeant that he understood his rights, and the sergeant began to question him.

> [2]On rehearing, this statement was corrected to note that because of injuries to Wilson's hands, he was unable to sign the form for himself. Instead, after he was advised of his rights and verified that he understood them, Sergeant Breedlove wrote on the waiver of rights form that Wilson was unable to sign because he was injured. This correction did not alter our original disposition regarding the admissibility of his statement. *Wilson* v. State, No. 49A05-0806- CR-329, 904 N.E.2d 392 at *1 (Ind. Ct. App., Mar. 25, 2009).

During the interview, Wilson asked to make a telephone phone call so that he could talk to someone because of the seriousness of the events. The sergeant told Wilson that he could stop answering questions at any time and allowed Wilson to make a

telephone call. Wilson attempted to call his father, who he was unable to reach. After making the phone call, Wilson told the sergeant that the person he wanted to speak to was his father but that he was unable to reach him.

Sergeant Breedlove readvised Wilson of his rights, and Wilson told the sergeant that he understood those rights and was willing to continue answering questions. During the interview, Wilson appeared coherent, understood the questions the sergeant asked him, never became confused, and thought about and provided answers to the questions. Although Wilson delayed answering some of the questions about how Nupur became doused with gasoline and set on fire, Sergeant Breedlove interpreted Wilson's responses to be deceitful rather than confused.

During the interview, Wilson admitted that his previous story about the grill accident was not true. Wilson explained that he told that story because he panicked. According to Wilson, he was holding a gas can while he and Nupur were arguing. Nupur pulled on the can and gas apparently splashed on her and ignited when one of them lit a cigarette. Wilson explained that when Nupur drank alcohol, "she always [got] very, very argumentative and want[ed] to put [Wilson] down and want[ed] to say things to push buttons." The State subsequently charged Wilson with attempted murder and aggravated battery. Nupur, who had third degree burns on 80% of her body, was placed in a drug-induced coma to allow for treatment and pain management. After she died from multi-organ failure resulting from her burns five weeks later, Wilson was charged with murder.

At trial, additional evidence revealed that in March 2007, while Nupur was staying at a hotel in Indianapolis, she and Wilson got into a physical altercation. Jimmy Barona, the hotel's owner, testified that Nupur's hair was messed up, and she had a black eye and scratches on her face. When Nupur and Barona told Wilson to leave Nupur's hotel room, Wilson pushed Nupur and appeared ready to fight Barona. Barona and a hotel maintenance worker had to physically remove Wilson from the room.

In addition, a former neighbor testified that Wilson and Nupur argued every day. According to the neighbor, one night Wilson

banged on Nupur's apartment door for hours demanding to be let into the apartment. The following morning, the neighbor noticed plaster from the ceiling and the walls had been knocked to the floor by Wilson's banging.

Also at trial, ATF Fire Research Engineer Brian Grove testified that he conducted nine tests where gas was splashed on a manikin [sic] wearing jeans and a sweater similar to those that Nupur was wearing. The tests revealed that Nupur was seated when she was doused with approximately one-half cup of gasoline below her waistband and above her knees. The gasoline was then ignited with a flame, not a cigarette, which had to have been placed one to two inches from the gasoline. Two lighters were found on the patio where Nupur was sitting. One of the lighters was found on a table, and the other was found on the ground.

Wilson testified that at the time he gave his statement to Sergeant Breedlove, Wilson was "pretty doped up," and easily confused. He also testified that Nupur set herself on fire and asked him not to tell anyone what she had done. . . .

Wilson's family retained attorney Marvin Coffey shortly after the charges were filed, and Coffey represented Wilson through trial and sentencing. A jury found Wilson guilty after a 5 three-day trial, and the trial court sentenced him to sixty years, with fifteen years suspended, five of which were to be served on probation.

On direct appeal, Wilson argued the trial court erred in admitting into evidence his statement to police because it was not voluntary and was admitted in violation of his right to counsel. He also argued the evidence was insufficient to support his conviction. This court affirmed Wilson's conviction, holding the trial court did not err in admitting his statements, *id*. at *3-4, and there was sufficient evidence to support the jury's verdict, *id*. at *5. [Wilson sought transfer to the Indiana Supreme Court where he reiterated his claims. The Indiana Supreme Court denied transfer on May 14, 2009. Ex. B].

[On July 7, 2009,] Wilson filed a petition for post-conviction relief that was later amended by counsel. He alleged he was entitled to relief because his trial counsel had been ineffective in numerous respects. Following a hearing, the post-conviction

court entered findings of fact and conclusions thereon, denying
Wilson's petition for post-conviction relief upon finding his trial
counsel was not ineffective.

Ex. N at 2-4.

On appeal from the denial of post-conviction relief, Petitioner argued that his trial counsel was ineffective for: (1) "failing to adequately counsel him about the possibility of tendering lesser-included offense instructions to the jury, prejudicing him because he might not have been convicted of murder if the instructions had been given"; (2) "failing to present evidence regarding both his and Nupur's levels of intoxication at the time of the incident, prejudicing him because the reliability of statements made in the immediate aftermath would have been suspect with this evidence"; (3) "failing to object to Nupur's statements to the paramedics and to evidence of uncharged misconduct on Wilson's part"; (4) "not filing a pre-trial motion to suppress his statement to police but instead objecting to the statement and asking the detective preliminary questions in front of the jury during his testimony"; and (5) failing to seek a ruling on alleged prosecutorial misconduct." Ex. N. Petitioner also contended that the alleged cumulative errors by his trial counsel undermined confidence in the jury verdict and warranted post-conviction relief. Ex. N at 27-28.

On October 24, 2014, the Indiana Court of Appeals held that Petitioner was not denied the effective assistance of trial counsel and affirmed the denial of post-conviction relief. Ex. N. On transfer, Petitioner reasserted his claim and the Indiana Supreme Court denied transfer on January 21, 2015. Ex. C; Ex. O.

On January 21, 2016, Petitioner, through counsel, filed a petition for writ of habeas corpus seeking federal collateral review of his 2008 Marion County, Indiana, conviction for murder. This Court entered an order pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and requested that Respondent show cause why a writ of habeas corpus should not be granted.

## ARGUMENT

## I.

## Standards Governing Federal Collateral Review

In order to be entitled to federal habeas relief, a petitioner must establish that he is being held in violation of the United States Constitution or the laws or treaties of the United States. 28 U.S.C. § 2241; *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). The petition in this case was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and so the AEDPA's provisions apply here. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication of the petitioner's constitutional claims was based on unreasonable fact-finding or was contrary to, or involved an unreasonable application of, clearly established federal law." *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009) (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 376-77 (2000)).

The burden of establishing a right to federal collateral relief resides with the petitioner. *Harrington v. Richter*, 562 U.S. ---, 131 S.Ct. 770, 784 (2011); *Johnson v.*

*Zerbst*, 304 U.S. 458, 468-69 (1938); *Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009).  Section 2254(d) "…preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  *Richter*, 562 U.S. ---, 131 S.Ct at 786.  "If this standard is difficult to meet, that is because it was meant to be." *Id*.  "A [petitioner] whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke*, 106 F.3d 1381, 1388 (7th Cir. 1997).

## II.
### The Indiana Court of Appeals correctly applied established federal law in holding that Petitioner was not denied the effective assistance of counsel.

Petitioner contends that his trial counsel rendered constitutionally ineffective assistance.  Specifically, Petitioner alleges that the Indiana Court of Appeals unreasonably applied *Strickland* on holding that his trial counsel was not ineffective with respect to his investigation and presentation of intoxication evidence with respect to Nupur and Petitioner.  Because the Indiana Court of Appeals reasonably applied clearly established federal law in concluding that Petitioner's trial counsel was effective, habeas relief is foreclosed.

### Standard of Review for Claims of Ineffective Assistance of Counsel

Ineffective assistance of counsel claims require the petitioner to establish that his counsel's performance fell below an objective standard of reasonableness, and this deficiency actually caused prejudice.  *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).  To

support a claim of ineffective assistance of counsel, Petitioner must demonstrate: (1) that counsel's performance was deficient, and (2) that absent said deficient performance, there exists a reasonable probability of a different outcome. *Id.* To satisfy the first prong, Petitioner must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Williams v. Taylor*, 592 U.S. 362, 390 (2000). In considering counsel's performance, a reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To satisfy the second prong, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694); *see also Bell v. Cone*, 535 U.S. 685, 702 (2002) (to support a claim of ineffective assistance of counsel on habeas review, a petitioner must show that the state court's application of *Strickland*'s attorney-performance standard was objectively unreasonable).

The United States Supreme Court has reiterated and clarified the applicability and practical effect of these standards in a manner particularly instructive here. *See Harrington v. Richter*, 562 U.S. ---, 131 S.Ct. 770, 786 (2011). *Richter* found that the Ninth Circuit's conclusion that the state appellate court had unreasonably applied clearly established federal law to an ineffective assistance

claim was based on its level of confidence regarding the conclusion that court would

have reached had it conducted *de novo* review:

> The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review: Because the Court of Appeals had little doubt that Richter's *Strickland* claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it. This analysis overlooks arguments that would otherwise justify the state court's result and ignores further limitations of § 2254(d), including its requirement that the state court's decision be evaluated according to the precedents of this Court. *See Renico v. Lett*, 559 U.S. ----, ----, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010). *It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra*, at 75, 123 S.Ct. 1166.

*Richter*, 562 U.S. ---, 131 S.Ct. at 786 (emphasis added).

*Richter* clarifies *Strickland*'s requirement of showing prejudice from actions

or omissions of counsel:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U.S. ----, ----, 130 S.Ct. 383, 390, 175 L.Ed.2d 328 (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U.S., at 693, 104 S.Ct. 2052. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696, 104 S.Ct. 2052. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S.Ct. 2052. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S.Ct. 2052.

*Richter*, 131 S.Ct at 791-92.

*Richter*, and *Premo v. Moore*, 556 U.S. ---, 131 S.Ct. 733 (2011) ("The

*Strickland* standard is a general one, so the range of reasonable applications is

substantial.")(quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)), decided the

same day, stand together as a powerful admonishment to federal courts conducting

review of state court applications of clearly established federal law. Together, they

hold that grants of federal habeas relief from state court adjudications should be

reserved for only cases where fair-minded jurists would agree that the state court's

adjudication had no justification in existing law:

> If this standard is difficult to meet, that is because it was meant
> to be. As amended by AEDPA, § 2254(d) stops short of imposing
> a complete bar on federal court relitigation of claims already
> rejected in state proceedings. Cf. *Felker v. Turpin*, 518 U.S. 651,
> 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244). *It preserves
> authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decision
> conflicts with this Court's precedents. It goes no farther.* Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61
> L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a
> condition for obtaining habeas corpus from a federal court, a
> state prisoner must show that the state court's ruling on the
> claim being presented in federal court was so lacking in
> justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 131 S.Ct. at 786-87 (emphasis added).

> Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be met by
> showing there was no reasonable basis for the state court to
> deny relief. This is so whether or not the state court reveals
> which of the elements in a multipart claim it found insufficient,

for § 2254(d) applies when a "claim," not a component of one, has
been adjudicated.

Id. at 784.

Here, the Indiana Court of Appeals' adjudication of Petitioner's claim of trial

counsel ineffectiveness was not only well within the possibility of disagreement

between fairminded jurists, but correct.  There is no basis here for federal habeas

relief.

**The Indiana Court of Appeals correctly applied established federal law.**

The Indiana courts did not apply a standard that was contrary to *Strickland*

*v. Washington*, 466 U.S. 668 (1984).  The primary question addressed by the

Indiana Court of Appeals was as follows:

> To prevail on an ineffective assistance claim, Wilson must
> satisfy the two-part test set forth in *Strickland v. Washington*,
> 466 U.S. 668 (1984). First, he must demonstrate that his
> counsel's performance was deficient; that is, that counsel's
> performance "fell below an objective standard of
> reasonableness." *Id*. at 687-88. Our scrutiny of counsel's
> performance is "highly deferential[,]" and we "indulge a strong
> presumption that counsel's conduct falls within the wide range
> of reasonable professional assistance." *Id*. at 689. "[A] defendant
> must offer strong and convincing evidence to overcome this
> presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).
> Second, he must show that the deficient performance caused
> prejudice to him by showing a "reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding
> would have been different." *Strickland*, 466 U.S. at 694. "A
> reasonable probability is a probability sufficient to undermine
> confidence in the outcome." *Id*.

Ex. N at 6-7.

The Indiana Court of Appeals correctly identified the analysis provided in *Strickland* for determining ineffective assistance of counsel claims and correctly applied it to Petitioner's claims. Ex. N at 12-15.

Both the post-conviction court and the Indiana Court of Appeals properly concluded that Petitioner's trial counsel was not ineffective for not presenting evidence of Wilson and Nupur's specific blood alcohol levels at the time of the fire and that Wilson was not prejudiced by any such omission (PC App. 83-85); Ex. N at 12-15.

Medical records for Nupur and Wilson recorded blood alcohol levels for each on the day of the fire (PC Tr. 53, 66-67, 173-74, 188-89; Petitioner's PC Ex. E). Trial counsel testified that he was aware that both Nupur and Wilson had high levels of intoxication and of the blood tests contained in the medical records but that he did not fully understand the specific blood results in the medical records because they were blood alcohol results rather than breath content results, with which he was more familiar (PC Tr. 59, 61, 64-67). However, trial counsel had the medical records reviewed by a doctor, and trial counsel ultimately concluded that the specific blood alcohol levels were not important at trial (PC Tr. 64-67).[1] Trial counsel believed that sufficient other evidence established that both Wilson and Nupur drank heavily on the day of the fire (PC Tr. 70-75, 116-17).

---

[1] While the records of Nupur and Petitioner were reviewed by a psychiatrist, they were reviewed with the general purpose to find any useful information to use against Nupur and in favor of Petitioner (PC Tr. 70).

At the post-conviction hearing, Petitioner called Dr. Daniel McCoy a toxicologist to discuss the meaning of the results in the medical records. Dr. McCoy testified that Nupur's blood alcohol level near the time of the fire would have been above .30 (PC Tr. 180). He also estimated that Wilson's blood alcohol level near the time of the fire would have been approximately .281 (PC Tr. 189-90). However, contrary to Petitioner's summation of Dr. McCoy's testimony, Dr. McCoy was anything but unequivocal. The record demonstrates that Dr. McCoy was equivocal on the impact of the results indicated for the victim and Petitioner. Dr. McCoy had no experience dealing specifically with the impact of alcohol on burn victims (PC Tr. 167, 201). Dr. McCoy further added that experienced drinkers with a high tolerance for alcohol, like the victim and Petitioner would be less affected by the level of alcohol in their system (PC Tr. 184, 192, 198-99). Dr. McCoy conceded that a person's entire drinking history would be relevant to the impact that the blood alcohol level would have on them but that he did not have or evaluate such information for either Nupur or Petitioner (PC Tr. 186-87, 191, 206).

In holding that counsel was not ineffective, the Indiana Court of Appeals set forth the evidence in the record of intoxication and held that trial counsel elicited testimony at trial that "Nupur had a drinking problem that she and Wilson met at a rehabilitation facility, that she was on the verge of returning to rehab when this incident occurred, and that on the way to the hospital, she told the paramedic that she had "a lot" to drink before the incident. Trial Tr. at 151–52." Ex. N at 13. Therefore, "[a]lthough he may not have presented all available evidence, [trial

counsel] did present evidence of Nupur's intoxication at the time of the incident as well as her history with alcohol.  And the members of the jury likely brought with them into the courtroom their own experiences or observations regarding the effects of intoxication."  Ex. N at 14.

As to Petitioner, the Indiana Court of Appeals noted the there was also evidence in the record that Petitioner had been drinking on the day of the fire. Nevertheless, the Indiana Court of Appeals held:

> the defense theory relied on the jury believing Wilson's recollections from the day of the incident—that the fire started accidentally or was started by Nupur herself, that he tried to put the fire out, and that he carried her into the house and put her in the bathtub. Although there was testimony that Wilson, too, had been drinking prior to the incident, focusing on the unreliability of intoxicated persons in remembering and relating events by calling an expert to testify at length would have undermined that theory.

Ex. N at 15.  Thereafter, the Indiana Court of Appeals held that even if there was deficient performance, and trial counsel should have introduced the specific BAC numbers and extrapolations in addition to a thorough explanation of the cognitive effects of the intoxication, Petitioner could not establish prejudice: "we cannot say Wilson has shown a reasonable probability that the result would have been different. Intoxication was an element of the case even without the specific numbers. Wilson has not convinced us there is no way the post-conviction court could have concluded counsel was not ineffective in this regard."

Ex. N at 15.  The Indiana Court of Appeals' holding was not only reasonable, but a correct application of the law.  As noted, the record, facts unchallenged by Petitioner, support the state appellate court's holding.

Significantly, the post-conviction court found trial counsel had researched the issue of voluntary intoxication and was well aware that it was not a defense to murder in Indiana (PC App. 62-63).  Trial counsel's theory of the case was that the fire was set accidently, and that Petitioner's statements to medical personnel, the police, and his trial testimony, were consistent with that theory.  Contrary to Petitioner's contention, and held by the Indiana Court of Appeals, lengthy expert testimony regarding the exact number of Petitioner's BAC, his drinking history, and the assumed cognitive effect the specific BAC number would have had on Petitioner would have achieved nothing other than to further damage Petitioner's credibility, especially given that he previously lied to the police.

As long held by the Seventh Circuit, expert testimony with regards to witness perception is not necessary on issues which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute and/or mislead or confuse the jury.  *See United States v. Hall*, 165 F.3d 1095, 1103-04 (7th Cir. 1999).  The same is true in Indiana under its version or Rue of Evidence 702.  *See Byrd v. State*, 593 N.E.2d 1183, 1185 (Ind. 1992).  Here, as the Indiana Court of Appeals held, the trial was rife with evidence of intoxication, "[a]nd the members of the jury likely brought with them into the courtroom their own experiences or observations regarding the effects of intoxication."  Ex. N at 14.  Supplementing the

aforementioned evidence with specific numbers would have at best, had the effect of confusing the jury on at topic of which they possessed common knowledge, and at worst, further diminished Petitioner's credibility and bolstered the State's case. The Indiana Court of Appeals correctly held that trial counsel was not ineffective

Moreover, Petitioner told police that that he and Nupur had been drinking, that in the past when they argued when they drank, and that when they drink, Nupur can "push buttons" (State's Tr. Ex. 73 at p. 132-34). Further emphasis on their alcohol consumption could have bolstered the impression that Petitioner had a violent outburst in response to Nupur's provocation.

As to Nupur, the unchallenged factual findings demonstrated that evidence was presented to the jury that Nupur was an alcoholic, had previously been in rehab, and was planning to re-enter rehab imminently. Further, trial counsel elicited on cross-examination of paramedic on scene that when she asked Nupur how much she had to drink, Nupur responded "a lot." (Tr. 151-52). As the Indiana Court of Appeals aptly stated, "Intoxication was an element of the case even without the specific numbers." Ex. N at 15.

In addition, at the post-conviction hearing, the prosecutor who tried the case testified that, in any event, there would have been issues with admissibility of the BAC tests conducted at the hospital due to a lack of chain of custody, that the blood draw was not done for evidentiary purposes, and medication Nupur was given in the ambulance, facts found by the post-conviction court in concluding that counsel was not ineffective. Ex. K at 85.

Moreover, Petitioner's contention that because the Indiana Court of Appeals failed to address the prejudice prong of *Strcickland* the Court must address that prong *de novo*, is misplaced.  ECF 1 at 16-17.  The Indiana Court of Appeals did address prejudice.  The Indiana Court of Appeals addressed Petitioner's claim as to both Nupur's and Petitioner's intoxication under one heading.  At the conclusion of the Court of Appeals' analysis under that heading, the Indiana Court of Appeals held:

> Even if counsel should have introduced the blood alcohol evidence and provided a thorough explanation of the cognitive effects of intoxication and how that related to the evidence at trial, we cannot say Wilson has shown a reasonable probability that the result would have been different. Intoxication was an element of the case even without the specific numbers. Wilson has not convinced us there is no way the post-conviction court could have concluded counsel was not ineffective in this regard.

Ex. N at 15.  Accordingly, the Indiana Court of Appeals did render a decision on the merits with regards to the prejudice prong and therefore, this Court owes that decision AEDPA deference.

The Indiana Court of Appeals' adjudication of Petitioner's allegation of trial counsel ineffectiveness was not only well within the possibility of disagreement between fairminded jurists, but correct.  This is especially true whereas here, trial counsel did investigate and present evidence to the jury of both Wilson's and Nupur's intoxication, unchallenged facts found by both the post-conviction court and the Indiana Court of Appeals.  Moreover, Nupur was unequivocal about the circumstances that occurred; Petitioner poured gasoline on her and lit her on fire,

whereas Dr. McCoy was equivocal about the effects of alcohol on both Petitioner and Nupur.

As the Indiana Court of Appeals held, "[i]ntoxication was an element of the case even without the specific numbers." The jury was made aware of the parties' history with alcohol and that both has been drinking a great deal on the day Petitioner set Nupur on fire. Admitting evidence with specific numbers would have not changed the result of the proceedings and would have caused further damage to Petitioner's credibility. Due to Nupur's predisposition to "push buttons" the more alcohol she consumed, and the damage to Petitioner's credibility with additional evidence of intoxication, counsel was in fact effective for not introducing additional evidence of intoxication.

Accordingly, had trial counsel done as Petitioner now claims he was ineffective for declining to do, he would have been ineffective under the Seventh Circuit's reasoning in *Miller*. The *Miller* Court stated:

> Most questionable of all the lawyer's fumbles was his decision to call a psychologist to testify that Miller was incapable of the kind of violence that had been perpetrated against the victim. The lawyer did this knowing that Miller had been previously convicted of kidnapping, rape, and sodomy and at the time of the crime for which he was being tried had been free on parole from a life sentence for kidnapping. The state brought these facts out on cross-examination of the psychologist and they not only destroyed the psychologist's credibility but almost certainly and perhaps decisively bolstered the jury's confidence in Miller's guilt. (The state had made no effort to place his prior convictions in evidence to demonstrate a modus operandi.) At the post-conviction proceedings, the lawyer was unable to articulate a coherent reason for having put the psychologist on the stand, given the inevitability of the destruction of the psychologist and of Miller himself if the jury was told about the prior convictions.

> Nor did the Indiana courts give any reason for supposing it an even minimally intelligent tactic. The fact that it was a tactic obviously does not immunize it from review in a challenge to the lawyer's effectiveness. Tactics are the essence of the conduct of litigation; much scope must be allowed to counsel, but if no reason is or can be given for a tactic, the label "tactic" will not prevent it from being used as evidence of ineffective assistance of counsel. *United States v. Zarnes*, 33 F.3d 1454, 1473 (7th Cir.1994); *Jackson v. Roth*, 24 F.3d 1002, 1004-05 (7th Cir.1994); *United States v. Booker*, 981 F.2d 289, 295 (7th Cir.1992); *Wade v. Franzen*, 678 F.2d 56, 58 (7th Cir.1982); *Kellogg v. Scurr*, 741 F.2d 1099, 1102 (8th Cir.1984).

*Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001). Trial counsel's decision not to put on cumulative evidence of intoxication was the correct course to take under these facts to prevent further damage to Petitioner's credibility and to prevent the jury from further considering that Nupur's alcohol consumption caused her to "push buttons" that led to a violent outburst from Petitioner. The Indiana Court of Appeals' holding was in accordance with clearly established federal law.

At the very least, the Indiana Court of Appeals' holding was within the possibility of disagreement between fairminded jurists. Petitioner's argument is nothing more than an assertion that in hindsight counsel could have done more. Ineffective assistance claims are not analyzed through the distorted lens of hindsight. *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012).

Accordingly, nothing in the state court's decision qualify it as objectively unreasonable application of *Strickland* and its progeny. Under any standard, whether *Strickland*, under the AEDPA, or *de novo* review, Petitioner has failed to prove entitlement to relief.

**B.     Overall Performance**

Because there were no errors, the Indiana Court of Appeals' holding that there was no cumulative error was correct.  Nevertheless, trial counsel's performance on Petitioner's behalf was well above an objective standard of reasonableness.  Counsel's representation must be evaluated as a whole.  *See Payne v. Brown*, 662 F.3d 825, 829 (7th Cir. 2011) (citing *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) ("It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one").

During the trial, counsel, *inter alia*, presented an opening statement for the defense, cross-examined twelve of the State's fifteen witnesses, made numerous offers to prove throughout the trial, asked the court's permission to question a juror who advised the bailiff during trial that he went to school with a detective, asked pertinent preliminary questions of Sgt. Breedlove when the State offered Petitioner's taped statement into evidence, objected to the admission of the Petitioner's statement, voiced numerous objections during trial, presented seven witnesses to testify for the defense - including Petitioner, established a sufficient foundation via questioning of defense witness, in a hearing outside of the jury's presence, to then allow the witness  to testify at trial as to Petitioner's reputation for peace and non-violence and as to her opinion that Petitioner sounded as if he was under the influence during his statement to the police, successfully objected to one of the State's proposed final jury instructions, objected and argued against the

court answering a jury question by the reading of a single instruction (Tr. 6, 23-27, 105-09, 180-88, 214, 220, 331-37, 336-44, 346-476, 389-99, 401-07, 411-13, 479-81, 521-22, 527-34).

With regards to his closing statement, trial counsel made a zealous argument covering a variety of scenarios. Trial counsel noted that it was tragic what happened to Nupur but that trial is about the evidence and not about retribution (Tr. 496). Trial counsel informed the jury that the evidence that the outside faucet was turned on and the hose going into the patio area was consistent with Petitioner's testimony that the gas can was in plain view and not hidden as the State argued, and that Petitioner could have easily placed the can in the garage with the other gas cans if he wanted to hide it (Tr. 497). Counsel noted that Petitioner tried to save Nupur by beating at the flames with his hands as corroborated by his burns, then by trying to use the hose as corroborated by the location of the hose, and then by carrying her to the bathroom as corroborated by the marks on the hallway walls and the marks and hair on the wall of the shower/bathtub; that when asked by the paramedic if she had been drinking, Nupur said "a lot," that Nupur's hands were between her legs and all she would have to do is flip the lighter once to start the fire - whether on purpose or merely as a result of the amount of alcohol she had consumed, and that the lighter on the ground near Nupur's chair was corroborative of that version of the events (Tr. 498-501,510).

Moreover, trial counsel hired a private investigator to investigate Nupur's past in Maryland, a fire investigator to help with analysis of the evidence at the

scene and a doctor to scour the medical records. Furthermore, trial counsel sought an interlocutory appeal during trial, which was granted by the trial court, regarding his attempt to have expert testimony presented from a professor in world religion about the role of fire in Hinduism; Nupur's religion (Tr. App. 178-81). Consequently, trial counsel was a strong advocate for Petitioner, and his overall performance was nothing less than reasonable.

In sum, Petitioner cannot meet the double burden of overcoming both *Strickland* and § 2254(d) review. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *Id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so." *Premo*, 131 S. Ct. at 739–40*; Richter*, 131 S.Ct. at 788. Accordingly, the Indiana Court of Appeals' conclusion that Petitioner's trial counsel was not ineffective is in accord with clearly established federal law. Habeas relief is foreclosed.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Respondent respectfully requests this Court to deny this action **WITH PREJUDICE**.

Respectfully submitted,

GREGORY F. ZOELLER
Attorney General of Indiana

s/Henry A. Flores, Jr
Henry A. Flores, Jr.
Deputy Attorney General

*Counsel for Respondent*

## EXHIBITS TO RESPONDENT'S RETURN

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, Respondent submits the following as Exhibit to his Return to Order to Show Cause filed in the above captioned case:

Exhibit A: Marion County Chronological Case Summary in *State v. Wilson*, Cause No. 49G04-0704-PC-057737;

Exhibit B: Appellate Case History, *Wilson v. State*, Cause No. 49A05-0806-CR-00329;

Exhibit C: Appellate Case History, *Wilson v. State*, Cause No. 49A02-1401-PC-00049;

Exhibit D: Brief of the Appellant, *Wilson v. State*, Cause No. 49A05-0806-CR-00329;

Exhibit E: Brief of the Appellee, *Wilson v. State*, Cause No. 49A05-0806-CR-00329;

Exhibit F: Reply Brief of the Appellant, *Wilson v. State*, Cause No. 49A05-0806-CR-00329;

Exhibit G: Opinion, *Wilson v. State*, Cause No. 49A05-0806-CR-00329 (Ind. Ct. App., Jan. 16, 2009);

Exhibit H: Petition to Rehearing, *Wilson v. State*, Cause No. 49A05-0806-CR-00329;

Exhibit I: Opinion on Rehearing, *Wilson v. State*, Cause No. 49A05-0806-CR-00329 (Ind. Ct. App., March 25, 2009);

Exhibit J: Petition to Transfer, *Wilson v. State*, Cause No. 49A05-0806-CR-00329;

Exhibit K: Brief of the Appellant, *Wilson v. State*, Cause No. 49A02-1401-PC-00049;

Exhibit L: Brief of the Appellee, *Wilson v. State*, Cause No. 49A02-1401-PC-00049;

Exhibit M: Reply Brief of the Appellant, *Wilson v. State*, Cause No. 49A02-1401-PC-00049;

Exhibit N:   Opinion of the Indiana Court of Appeals, *Wilson v. State*, Cause No.
            49A02-1401-PC-00049 (Ind. Ct. App., Oct. 24, 2014);

Exhibit O:   Petition to Transfer, *Wilson v. State*, Cause No. 49A02-1401-PC-00049;

Exhibit P:   Brief in Opposition to Transfer, *Wilson v. State*, Cause No. 49A02-
            1401-PC-00049.

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing document. Because

Petitioner is represented by counsel, service has been accomplished through the

CM/ECF system.

s/ Henry A. Flores, Jr.
Henry A. Flores, Jr.
Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
317-233-1665 (voice)
317-232-7979 (facsimile)
henry.flores@atg.in.gov